FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 29, 2020

SEAN F. McAVOY, CLERK

ROY CHEESMAN
1708 N INDIANA DR.
ELLENSBURG, WA 98926

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Roy D Cheesman, | Case No. 1:20-CV-3054-SAB |
| Plaintiff, | |
| Vs. | COMPLAINT |
| U.S. Dept. of Homeland Security, | |
| Transportation Security Administration | |
| Defendant. | |

Plaintiff, Roy D Cheesman, brings forth the following causes of action:

6 U.S. Code § 111. Executive department; mission, (G) ensure that the civil rights and civil liberties of persons are not diminished by efforts, activities, and programs aimed at securing the homeland;

The U.S. Department of Homeland Security and the Transportation Security Administration employee in SeaTac International Airport located at 17801 International Blvd, Seattle, WA 98158, neglected the 6 U.S. code 111, Mission (g) and in the process violated the plaintiff civil rights and civil liberties.

RECEIVED
Apr 29, 2020
CLERK, U.S. DISTRICT COURT

1  On August 26, 2019, Boarding Time 13:40, the U.S. Department of Homeland
2  Security employee TSA, screen and inspected plaintiff checked baggage that are
3  bound for international travel, the plaintiff eight (8) check baggage that came
4  from the chain driven baggage feeds from the front costumer service counter of
5  Asiana international airlines receptionist in SeaTac international airport in
6  Washington state was delivered to the screening room of the TSA inside the
7  SeaTac international airport.
8
9
10 The plaintiff eight (8) checked baggage was inspected and screened somewhere
11 inside the SeaTac International airport building/facility by the U.S. Homeland
12 Security TSA employee if there were illegal goods or other items that are not
13 allowed for international traveling, like for example, other creatures hidden
14 inside a check baggage or terrorist item, like gun, gun parts, gun magazine,
15 ammunition and bomb parts like pressure cooker metal gallon that could explode
16 while inside an airplane that are hidden and are questionable inside the checked
17 baggage bound for international travel.
18
19
20 The Homeland Security Transportation Security Administration employee was
21 screening and examining the plaintiff (8) checked baggage containing, as
22 protocol for terrorism threat and banned items bound for international traveling
23 to other country, screening manually, tagging and sealing check baggage with
24 Homeland Security tape logo stickers after all necessary x-rays and other
25 protocol to detect unusually questionable items before boarding the checked
26 baggage in an airplane with the sealed logo of homeland security TSA stickers
27 that are bound to travel internationally.
28

| | |
|---|---|
| 1 | The Homeland Security TSA employee examine and screened the plaintiff eight |
| 2 | (8) checked baggage somewhere inside the SeaTac international airport building |
| 3 | facility, Seven (7) of the checked baggage was tape sealed by the TSA employee |
| 4 | with the logo of the homeland security stickers including one of the plaintiff |
| 5 | check baggage that are containing 50 rounds of live 9mm ammunition that are in |
| 6 | the middle of the rubber hose sitting on top of a 6-gal electric metal air |
| 7 | compressor that was sealed and tape with the stickers logo of the homeland |
| 8 | security TSA by the employee of the homeland security TSA who screened the |
| 9 | checked baggage from the front chain driven checked baggage feed counter of |
| 10 | the Asiana airlines. |
| 11 | |
| 12 | |
| 13 | The plaintiff one particular checked baggage containing gun parts that are with |
| 14 | the eight (8) checked baggage the TSA examining containing pieces of parts of |
| 15 | 9mm handgun was not tape Sealed with the Homeland Security sticker logo, |
| 16 | indicating that it has not pass screening examination by The U.S. Homeland |
| 17 | Security TSA employee upon screening the checked baggage for examination in |
| 18 | SeaTac international airport. |
| 19 | |
| 20 | |
| 21 | The plaintiff was not questions regarding of the questionable item the TSA |
| 22 | employee encountered during the screening of the plaintiff (8) checked baggage |
| 23 | with the Asiana airline customer service front desk agent in SeaTac international |
| 24 | airport before departure and in south Korea international airport after arrival and |
| 25 | after departure in south Korea, no one in two international airport are asking |
| 26 | about the unmark un sealed checked baggage or anyone handling a declaration |
| 27 | form to the plaintiff. |
| 28 | |

The plaintiff was allowed to travel with the seven (7) sealed checked baggage one containing 50 round of live ammunitions, stored in the middle of a rubber hose that are on top of a 6 gallon electric metal air compressor inside the checked baggage that are sealed and tape with the Homeland Security sticker logo to safe air travel internationally to south Korea and to the destination country to the Philippines and along with the unmark checked baggage containing gun parts and gun magazines that was screen and examine and x-ray by the TSA employee.

Upon arrival in destination in Clark international airport in the Philippines at around 12am on august 28, 2019, the Philippines Custom Employee Personnel asked the plaintiff to put the unmarked checked baggage to the x-ray machine and after the x-ray, the Philippines custom employee personnel immediately showed the plaintiff of a phone containing the x-ray of the unmark checked baggage from the Philippines custom personnel private handheld phone of The Homeland Security TSA x-ray of the unmark checked baggage containing concealed gun parts that was x-ray by the TSA in the USA and one other fellow male Pilipino coworker start blaming the other Filipina custom woman worker for not finding to the x-ray of the gun parts from the Philippines custom x-ray machine as it is a joke she was not sharp of doing her job.

The Philippines custom personnel refused to open the unmarked checked baggage for them self and start asking the plaintiff to open the unmark checked baggage after the x-ray and unload the contain of checked baggage for further examination and screening since the homeland security TSA did not tape sealed the checked baggage to travel internationally from the USA.

The Philippines Custom Employee Personnel in Clark International Airport confiscated the gun parts inside the Clark International Airport because the checked baggage was unmarked and was not sealed with the Homeland security TSA in south Korea and was not sealed by homeland security TSA in the USA.

The plaintiff was not question by the homeland security TSA employee or question by the Asiana airline of the legality of the guns parts to travel internationally while in the SeaTac international airport prior of departure from the USA and the plaintiff was not question after the arrival and departure from South Korea of about the checked baggage that was not sealed by the TSA.

Seven (7) of the checked baggage was tape sealed with the logo of the homeland security TSA along with the 50 round live ammunitions on top of a six-gallon electric metal compressor, and all seven (7) checked baggage was not examine by the Philippines custom employees personnel because it was tape sealed with the logo stickers of the homeland security by the TSA employee in SeaTac international airport and all seven (7) checked baggage was cleared without screening or examination and are approved to exit the Clark international airport because of the tape sealed stickers logo of the homeland security TSA from SeaTac international airport, except for one checked baggage that was unmarked.

The plaintiff freedom of speech was also violated by the Philippines local custom police officer while inside the Clark international airport, the plaintiff was told to be quiet (or risk an arrest in the Philippines) because of the plaintiff trying to explain and the plaintiff trying to show and provided the legal document of the gun parts that came from the USA and was told by the Philippines custom

employees personnel of that the office of the Clark international airport custom office are closed for the night that time and the Philippines custom employee does not know where to store the guns parts inside the Clark international airport and start asking each other on who's personal locker they will store the guns parts for safe keeping.

I (plaintiff) was given by the Philippines custom employees personnel a document of a violations of gun law in the Philippines for prosecutions and would not take the plaintiff American resident address in Washington state identification card and confiscated all the gun parts for further investigations and evidence, the Philippines custom refused to take the plaintiff residential address in the USA and took address that are not the plaintiff actual resident in the Philippines or destination.

The plaintiff must financially pay expenses for travel and retrieval of the gun parts that was seized in the Clark International Airport in the Philippines.

The plaintiff was giving by the Philippines custom employee of unknow location of an address in metro manila, two hours away from the Clark International airport that the plaintiff has to financially spend to travel and rent a place to stay in Paranaque metro Manila to find on who to speak for the retrieval of the gun parts to be send back in the USA, but no success of retrieval of the gun parts even after the plaintiff was going back to the USA and talking to the Philippines custom front desk in Ninoy Aquino international airport before the departure from the Philippines to retrieve the gun parts back to the USA.

## DAMAGES

Wherefore, Plaintiff seeks for the retrieval of the gun parts from the Philippines custom to be returned back to the USA and clean the criminal records of the plaintiff that will required a huge financial expenses of the plaintiff staying in the Philippines for more than a year or two for the application processing to retrieved the gun parts for the plaintiff to be able to be qualified to own legally a gun in the Philippines upon permanently retiring someday in the Philippines and for the statute of limitation to retrieve the gun parts from the Philippines Government custom facility.

Plaintiff demand damages for economic and noneconomic damages of $5,000,000

## Jury Demand

Plaintiff demands a jury trial.

Dated April 26, 2020

Roy D Cheesman/ Pro se
1708 N. Indiana Drive
Ellensburg, WA 98926

7